**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TINY ZAPS CO., JOSHUA MCDONALD, AND STEPHANIE MCDONALD, | **Case No. 2:26-cv-02895-BHH** |
| Plaintiffs, | |
| v. | |
| DR. BRANNON TRAXLER, in her official capacity as Public Health Director; and ALAN WILSON, in his official capacity as South Carolina Attorney General, | |
| Defendants. | |

## <u>COMPLAINT</u>

**INTRODUCTION**

1.      Tattoos are a form of artistic expression protected by the First Amendment. They communicate ideas, commemorate milestones, express beliefs, and allow people to present themselves to the world through permanent artwork created in collaboration with tattoo artists.

2.      Plaintiff Tiny Zaps is a modern tattoo company built around that principle. Founded in 2024, Tiny Zaps makes custom tattoo art more accessible through thoughtfully designed studios, artist collaborations, and pop-up experiences that bring tattooing into mainstream commercial spaces.

3.      Tiny Zaps seeks to expand into Charleston through a partnership with a boutique hotel in the city's historic district. It has negotiated a draft agreement with the hotel operator, identified a licensed South Carolina tattoo artist to operate the location, and stands ready to begin serving customers.

4.      South Carolina law prevents that expansion. State law prohibits licensing tattoo facilities within 1,000 feet of a church, school, or playground—a restriction that effectively forecloses Tiny Zaps' planned Charleston location.

5.      South Carolina law also makes it a crime for licensed tattoo artists to tattoo the head, face, or neck of a consenting adult, preventing Tiny Zaps from creating artwork that its artists routinely perform elsewhere and its customers routinely request.

6.      These restrictions are not ordinary health and safety regulations. South Carolina already comprehensively regulates tattooing through licensing, sanitation, sterilization, training, inspections, and customer-protection requirements. Tiny Zaps challenges none of those regulations.

7.     Instead, Tiny Zaps challenges laws that burden the speech itself. One restricts where tattoo artists may create protected expression. The other prohibits an entire category of protected expression based solely on where on the body the artwork appears.

8.     The First Amendment does not permit South Carolina to treat tattooing as a disfavored form of expression. Whether artwork appears on canvas, paper, or skin, the Constitution protects both the artist's right to create it and the customer's right to receive it.

9.     Tiny Zaps, together with South Carolina residents Joshua and Stephanie McDonald, therefore seek declaratory and injunctive relief prohibiting enforcement of these unconstitutional restrictions.

**JURISDICTION & VENUE**

10.     This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

11.     Venue is proper in this District and in this Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Civ. R. 3.01 because the proposed operation, the burdened expression, and the enforcement consequences giving rise to Tiny Zap's claims are centered in Charleston County, South Carolina.

**PARTIES**

12.     Plaintiff Tiny Zaps Co. is a New York corporation in the tattooing business. Founded in 2024 by entrepreneur Sam Kelly and tattoo artist Bruno Levy, Tiny Zaps operates tattoo studios in New York City and offers artist-designed tattoos through pop-ups and

collaborations around the country. Tiny Zaps is ready, willing, and able to open a location in Charleston but for the challenged laws.

13.     Plaintiffs Joshua and Stephanie McDonald are a married couple from Fountain Inn, South Carolina. They have numerous tattoos and value self-expression through the medium of tattooing. They would obtain additional tattoos, including tattoos on the head, face, or neck, from Tiny Zaps or other willing tattoo artists if South Carolina law permitted those tattoos to be performed.

14.     Defendant Dr. Brannon Traxler is the Acting Director of the South Carolina Department of Public Health. The South Carolina Department of Public Health is responsible for administering and enforcing South Carolina's tattoo-facility licensing laws and regulations.

15.     Defendant Alan Wilson is the Attorney General of South Carolina. The Attorney General is South Carolina's chief prosecuting officer and has authority to supervise criminal prosecutions in South Carolina.

16.     Both Director Traxler and Attorney General Wilson are sued in their official capacities only.

## FACTUAL ALLEGATIONS

17.     In 2024, entrepreneur Sam Kelly and tattoo artist Bruno Levy founded Tiny Zaps with a vision to make tattooing a more accessible and customer-friendly experience.

18.     At Tiny Zaps, customers can choose from artist-designed tattoos, book through a simple online platform, and receive tattoos in a safe, no-pressure environment.

19.     Tiny Zaps specializes in small tattoos, offering thousands of curated designs like those shown below.



20.     Tattoo artists do not merely apply ink to skin. They collaborate with customers to create artistic works that often carry deeply personal expressive significance. The resulting artwork derives meaning not only from its design, but also from its placement on the body.

21.     In addition to two brick-and-mortar studios in New York City, Tiny Zaps offers tattoos at studios, events, and pop-ups around the country.

22.     Tiny Zaps now has a concrete opportunity to bring its model to Charleston, South Carolina.

23.     A national operator of independent boutique hotels, restaurants, and retail brands has been in active discussions with Tiny Zaps about bringing Tiny Zaps pop-ups to its properties, including a boutique hotel in Charleston. As part of those discussions, Tiny Zaps negotiated a draft Master Services Agreement with the national operator.

24.     The hotel is located in the Historic District of Charleston. It caters to precisely the clientele that prefer Tiny Zaps tattoos.

5

25.     The opportunity to expand to Charleston represents a significant business opportunity for Tiny Zaps. In preparation for the collaboration, Tiny Zaps identified a trained and licensed South Carolina tattoo artist who is enthusiastic about partnering with Tiny Zaps to run its Charleston pop-up once it is free to operate.

26.     As Tiny Zaps was performing due diligence for the opportunity, it learned of two significant legal hurdles to its Charleston plans.

27.     The first is that South Carolina prohibits its Department of Health from granting or issuing a license to a tattoo facility if the place of business is within 1,000 feet of a church, school, or playground, as "computed by following the shortest route of ordinary pedestrian or vehicular travel." S.C. Code Ann. § 44-34-110(A)(1); S.C. Code Ann. Regs. 60-111.

28.     Under South Carolina law, "'Church' means an establishment, other than a private dwelling, where religious services are usually conducted"; "'School' means an establishment, other than a private dwelling where the usual processes of education are usually conducted"; and "'Playground' means a place, other than grounds at a private dwelling that is provided by the public or members of a community for recreation." S.C. Code Ann. Regs § 44-34-110(A)(2).

29.     Unsurprisingly, as a hotel in the heart of a city, "the Holy City," the hotel is in close proximity to a number of churches, including at least four within a 1,000-foot radius. There is also at least one school within a 1,000-foot radius.

30.     The second restriction is a criminal statute that makes it a misdemeanor for a tattoo artist to tattoo "any part of the head, face, or neck of another person." S.C. Code Ann. § 44-34-100(E). A person who violates that law may be fined up to $2,500, imprisoned up to one year, or both. *Id.* § 44-34-100(F).

31.     This ban on above-the-shoulders tattooing runs counter to Tiny Zaps's artistic vision of tattooing as a customer-driven experience that allows people to express themselves.

32.     The ban also restricts South Carolinians like Joshua and Stephanie McDonald from obtaining tattoos they would otherwise seek, severely restricting an art form that they value highly.

33.     Tiny Zaps routinely performs above-the-shoulders tattoos in other states, and these tattoos are frequently requested by its customers, as exemplified in the photos below.



34.     The 1,000-foot-proximity restriction and the above-the-shoulders restriction (together, the "Challenged Restrictions") are unique because, unlike South Carolina's numerous health and safety regulations governing tattooing, they do not regulate how tattooing is safely performed. Instead, they regulate where tattoo artists may speak and what tattoos willing adults may receive.

35.     For example, South Carolina extensively regulates the health and safety aspects of tattooing. The Department must establish sterilization, sanitation, and safety standards for tattooing, and those standards must be directed at maintaining sterile conditions and safely

disposing of instruments. S.C. Code Ann. § 44-34-20(A). Tattoo facilities must obtain a license from the Department before performing tattooing procedures. *Id.* § 44-34-20(B).

36. The State imposes additional infection-control rules. Tattoo artists must wash their hands before and after each procedure, use single-use sterile gloves and disposable needles, autoclave reusable instruments, maintain sterile fields, scrub skin with approved germicidal solution, and dispose of sharps in approved containers. *Id.* § 44-34-30(A). Tattoo artists must complete annual training in bloodborne pathogens and tattoo infection control, maintain first-aid and CPR certifications, comply with OSHA requirements, and cooperate with onsite inspections. *Id.* § 44-34-50.

37. South Carolina also makes it unlawful for a tattoo artist to tattoo a minor, unhealthy skin, or an inebriated person. *Id.* § 44-34-100(A)–(D).

38. These provisions show that South Carolina knows how to regulate any genuine health and safety concerns associated with tattooing through targeted licensing, sanitation, sterilization, training, inspection, and customer-protection requirements. Tiny Zaps does not challenge those requirements.

39. By contrast, the Challenged Restrictions do not target unsafe tattooing practices. They instead single out where tattooing may occur and which parts of the body consenting adults may use for tattoo art, reflecting tattooing's status as disfavored speech in South Carolina.

40. The same point is reinforced by South Carolina's treatment of body piercing. Like tattooing, body piercing involves penetrating the skin with needles or other instruments, exposing customers to risks of infection, bleeding, allergic reactions, bloodborne pathogens, and improper sterilization if not performed safely. Yet South Carolina does not prohibit body-piercing facilities

from operating within 1,000 feet of a church, school, or playground, nor does it impose broad bans on the locations of piercings on the body.

41.    South Carolina has long treated tattooing as disfavored expression. Until 2004, South Carolina was one of only two states that outlawed tattooing. And in *State v. White*, 348 S.C. 532 (2002), the South Carolina Supreme Court upheld the criminal prohibition, declaring that tattooing should not receive First Amendment protection. Although South Carolina later legalized tattooing, the Challenged Restrictions reflect the same outdated premise: that tattooing is not real art entitled to real constitutional protection.

42.    Tiny Zaps wants to move forward with the proposed Charleston opportunity and would seek all necessary and lawful approvals to proceed but for the Challenged Restrictions.

43.    Tiny Zaps has not moved to finalize its agreement with the hotel chain, nor has it applied for a tattoo-facility license, because the 1,000-foot restriction would make that application futile.

44.    Tiny Zaps also wants to offer, advertise, sell, and perform tattoos above the shoulders in South Carolina through trained and regulated tattoo artists, including the South Carolina artist it has identified for its Charleston opportunity. But South Carolina criminalizes the creation of protected expression, preventing Tiny Zaps from offering those tattoos to willing adult customers.

45.    If not for the ban, the McDonalds would seek out above-the-shoulders tattoos reflecting their personal tastes and self-expression.

9

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

*South Carolina's 1,000-Foot Tattoo-Facility Restriction Violates the First Amendment*
*(42 U.S.C. § 1983)*
*(Tiny Zaps only)*

46.     Tiny Zaps incorporates and realleges the allegations contained in the preceding paragraphs of this Complaint.

47.     The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits Defendants from enforcing laws that unlawfully burden protected expression.

48.     Tattooing, tattoos, and the business of tattooing are protected expression.

49.     South Carolina's 1,000-foot restriction burdens protected expression by prohibiting tattoo facilities from operating within 1,000 feet of a church, school, or playground.

50.     South Carolina's 1,000-foot restriction prevents Tiny Zaps from operating a tattoo facility at its preferred location in Downtown Charleston.

51.     South Carolina's 1,000-foot restriction likewise prevents prospective Tiny Zaps customers in Charleston from choosing Tiny Zaps-designed tattoos to express themselves.

52.     South Carolina's 1,000-foot restriction is a content-based restriction on protected expression because it singles out tattooing, an expressive medium, for special burdens not imposed on comparable non-expressive or less-expressive practices.

53.     The State lacks any compelling interest in preventing adults from receiving lawful tattoos at these locations or on these parts of the body, and in any event these prohibitions are vastly overinclusive and underinclusive.

10

54.     South Carolina's 1,000-foot restriction cannot survive strict scrutiny because it is not narrowly tailored to serve any compelling governmental interest.

55.     Even if treated as a content-neutral time, place, and manner restriction, South Carolina's 1,000-foot restriction violates the First Amendment because it is not narrowly tailored to serve any significant governmental interest.

56.     By maintaining and enforcing S.C. Code Ann. § 44-34-110(A)(1) and related regulations, Defendant Traxler maintains and enforces laws, practices, policies, and procedures under color of state law that deprive Tiny Zaps of its right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

57.     Tiny Zaps has no adequate remedy at law to compensate for the loss of its freedom of speech and will suffer irreparable injury absent an injunction prohibiting enforcement of the 1,000-foot restriction.

58.     Tiny Zaps is therefore entitled to declaratory and permanent injunctive relief prohibiting Defendant Traxler from enforcing S.C. Code Ann. § 44-34-110(A)(1) and related regulations against Tiny Zaps.

## SECOND CAUSE OF ACTION

*South Carolina's Criminal Head, Face, and Neck Tattoo Ban Violates the First Amendment*
*(42 U.S.C. § 1983)*
*(all Plaintiffs)*

59.     Plaintiffs incorporate and reallege the allegations contained in the paragraphs preceding the First Cause of Action of this Complaint.

60.     The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits Defendants from enforcing laws that unlawfully burden protected expression.

11

61.     Tattooing, tattoos, and the business of tattooing are protected expression.

62.     South Carolina makes it unlawful for a tattoo artist to tattoo any part of another person's head, face, or neck. S.C. Code Ann. § 44-34-100(E).

63.     South Carolina's head, face, and neck ban burdens protected expression by prohibiting an entire category of tattoos for consenting adults.

64.     South Carolina's head, face, and neck ban prevents Tiny Zaps from creating protected expression for willing adult customers.

65.     South Carolina's head, face, and neck ban prevents customers from receiving protected expression in the manner that they choose.

66.     South Carolina's head, face, and neck ban is a content-based restriction on protected expression because it criminalizes expressive tattoos above the shoulders while allowing some non-expressive or less-expressive needle-and-pigment procedures in the same general area, such as micropigmentation, along with body piercings.

67.     The location of a tattoo is frequently a component part of the message that a particular tattoo expresses. Restricting the location therefore restricts the message an artist and customer may express through a given tattoo.

68.     South Carolina's head, face, and neck ban cannot survive strict scrutiny because it is not narrowly tailored to serve any compelling governmental interest.

69.     Even if treated as a content-neutral time-place-manner restriction, South Carolina's head, face, and neck ban violates the First Amendment because it is not narrowly tailored to serve any significant governmental interest.

70.     South Carolina already regulates the health and safety risks of tattooing through licensing, sanitation, sterilization, inspection, training, and customer-protection rules.

71.    South Carolina also specifically prohibits tattooing minors, tattooing intoxicated customers, and tattooing unhealthy skin.

72.    South Carolina may address specific medical risks through targeted rules, including rules directed at scleral tattooing or tattooing dangerously close to the eye.

73.    But South Carolina may not criminalize all tattoos on the head, face, and neck, including small, simple tattoos that are regularly performed safely by Tiny Zaps.

74.    The head, face, and neck ban burdens substantially more speech than necessary to address any genuine health or safety concern.

75.    By maintaining and enforcing S.C. Code Ann. § 44-34-100(E), Defendants maintain and enforce laws, practices, policies, and procedures under color of state law that deprive Tiny Zaps, and prospective customers like Joshua and Stephanie McDonald, of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

76.    Plaintiffs have no adequate remedy at law to compensate for the loss of their freedom of speech and will suffer irreparable injury absent an injunction prohibiting enforcement of the head, face, and neck ban.

77.    Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief prohibiting Defendants from enforcing S.C. Code Ann. § 44-34-100(E) against Plaintiffs.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A declaration that South Carolina's prohibition on licensing tattoo facilities within 1,000 feet of a church, school, or playground, S.C. Code Ann. § 44-34-110(A)(1) &

13

S.C. Code Ann. Regs. 60-111, violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

B. A declaration that South Carolina's prohibition on tattooing any part of another person's head, face, or neck, S.C. Code Ann. § 44-34-100(E), violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

C. An entry of a permanent injunction prohibiting Defendants, in their official capacities, and their officers, agents, servants, successors, employees, and all other persons in active concert or participation with them, from enforcing S.C. Code Ann. § 44-34-110(A)(1) and related regulations against Plaintiffs;

D. An entry of a permanent injunction prohibiting Defendants, in their official capacities, and their officers, agents, servants, successors, employees, and all other persons in active concert or participation with them, from enforcing S.C. Code Ann. § 44-34-100(E) and related regulations against Plaintiffs;

E. An award of attorney fees, costs, and expenses in this action under 42 U.S.C. § 1988; and

F. Any further relief the Court deems just, necessary, or proper.

DATED: July 17, 2026.

Respectfully submitted,

*s/ E. Brandon Gaskins*
E. BRANDON GASKINS (Fed. ID No. 9507)
MOORE & VAN ALLEN PLLC
78 Wentworth Street
Charleston, SC 29401
Telephone: (843) 579-7000
Email: brandongaskins@mvalaw.com

14

DEAN MGEE
N.Y. Bar No. 5135884 *
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Email: DMcGee@pacificlegal.org

CALEB R. TROTTER
Cal. Bar No. 305195 *
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: CTrotter@pacificlegal.org


*Attorneys for Plaintiff*
*\* Pro Hac Vice motions forthcoming*